**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 35**

Docket Nos. DC-0752-14-0632-I-1

**Defense Intelligence Agency,[1]**

**Appellant,**

**v.**

**Department of Defense,**

**Agency.**

April 30, 2015

Paul P. Holden, Jr., Clifton, Virginia, pro se.

Kenneth F. Miller, Nokesville, Virginia, pro se.

John A. Fraser, III, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellants have filed petitions for review of the initial decision, which affirmed the agency's furlough actions. For the following reasons, we conclude that the petitioners have not established a basis under 5 C.F.R. § 1201.115 for

---

[1] Our findings in this Opinion and Order apply only to Appellant Paul P. Holden, Jr., MSPB Docket No. DC-0752-13-6407-I-1, and Appellant Kenneth F. Miller, MSPB Docket No. DC-0752-13-6613-I-1, not to the other appellants who previously were part of the consolidation in this case but did not file a petition for review. *See Dye v. Department of the Army*, 121 M.S.P.R. 142, ¶ 1 n.2 (2014).

granting their petitions for review.  We therefore DENY the petitions for review and AFFIRM the initial decision.

## BACKGROUND

¶2     On June 3, 2013, the agency informed the appellants, Assistant General Counsels in the Office of General Counsel (OGC) at the Defense Intelligence Agency (DIA), that it proposed to furlough them for no more than 11 workdays due to the "extraordinary and serious budgetary challenges facing the Department of Defense (DOD) for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on March 1, 2013," i.e., across-the-board reductions to federal budgetary resources caused by the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012.  Consolidated Appeal File (CAF), Tab 6 at 45-47; *Holden v. Department of Defense*, MSPB Docket No. DC-0752-13-6407-I-1, Initial Appeal File (Holden IAF), Tab 4 at 4, 17; *Miller v. Department of Defense*, MSPB Docket No. DC-0752-13-6613-I-1, Initial Appeal File (Miller IAF), Tab 2 at 4, 20.  The agency afforded the appellants an opportunity to respond orally and in writing to the proposal notice, to review the supporting material, and to furnish affidavits or supporting documentary evidence in their answers.  CAF, Tab 6 at 46.

¶3     In subsequent memoranda, the agency's deciding official determined that the reasons for the proposed furlough remained valid, the procedures and conditions related to the furlough were determined to be the most equitable means of implementing the furlough, and the appellants would be required to be on a discontinuous furlough for no more than 11 workdays during the period from July 8, 2013, through September 30, 2013.  Holden IAF, Tab 4 at 18; Miller IAF, Tab 2 at 21.  The appellants ultimately served 6 workdays on furlough.  Holden IAF, Tab 4 at 9; Miller IAF, Tab 2 at 15.

¶4     The appellants filed individual appeals challenging the furlough actions, which the Board consolidated in this case with the related appeals of other DIA

employees. CAF, Tab 1 at 1, 15. Among other things, the appellants contested the manner in which the agency implemented an exception to the furlough related to employees funded through the National Intelligence Program (NIP). CAF, Tab 14 at 3-4. In planning the furlough, the agency recognized only limited exceptions, which included when furloughing would not reduce the DOD budget. CAF, Tab 6 at 50-53. One exception applied to employees who were funded with NIP funds. *Id.* at 48, 52. In contrast, any employees who were funded with Military Intelligence Program (MIP) funds would be subject to furlough. *Id.* at 52. The agency explained that it exempted employees who were funded with NIP funds from the furlough because they were paid by the Office of the Director of National Intelligence and not with DOD funds. *Id.* at 21-22 (declaration of the Chief of the Employee Benefits and Services Division, DIA's Office of Human Resources), 28-30 (declaration of DIA's Chief Financial Officer). Conversely, employees who were funded with MIP funds remained subject to furlough because DOD, which was facing major budgetary shortfalls in its FY 2013 budget due to sequestration, was responsible for paying those employees. *Id.* at 28-29 (declaration of DIA's Chief Financial Officer), 35 (declaration of the Under Secretary of Defense (Comptroller)/Chief Financial Officer in DOD). Accordingly, while NIP-funded employees and MIP-funded employees may have been performing in the same or similar positions, the agency maintained that it was the source of funding for their positions, rather than the duties of the positions themselves, that differentiated them for furlough purposes. *Id.* at 29-31 (declaration of DIA's Chief Financial Officer). The appellants argued, among other things, that the DIA billets were misaligned and did not correspond to actual duties, which resulted in disparate treatment and the wrong employees being furloughed. CAF, Tab 14 at 3-4.

¶5 In an initial decision based on the written record, the administrative judge affirmed the furlough actions. CAF, Tab 19, Initial Decision (ID) at 1. She found that the agency's furlough was a reasonable management solution to the

shortage of funds caused by sequestration and that the agency established that its furlough actions were taken for the efficiency of the service. ID at 1-5, 8. In so finding, the administrative judge rejected the appellants' arguments that the agency did not conduct the furlough in a fair and even manner because it exempted NIP-funded employees from the furlough while it did not exempt employees, like the appellants, who were MIP-funded. ID at 4-5; Holden IAF, Tab 5 at 5-11; Miller IAF, Tab 4 at 4-8. The administrative judge also found unpersuasive the appellants' arguments that their billets were misaligned under the MIP. ID at 4-5; Holden IAF, Tab 5 at 5-7; Miller IAF, Tab 4 at 4-8. She further found that Appellant Miller failed to prove his claims that the agency violated his due process rights and committed harmful procedural error when it took the furlough action. ID at 5-8; Miller IAF, Tab 1 at 4.

¶6      The appellants have filed separate petitions for review of the initial decision. *Holden v. Department of Defense*, MSPB Docket No. DC-0752-13-6407-I-1, Petition for Review File (Holden PFR File), Tab 1; *Miller v. Department of Defense*, MSPB Docket No. DC-0752-13-6613-I-1, Petition for Review File (Miller PFR File), Tab 1. On review, the appellants primarily challenge the administrative judge's findings concerning the equity of the furlough as it applied to their group in OGC, which included both NIP-funded and MIP-funded attorneys. Holden PFR File, Tab 1 at 5-8; Miller PFR File, Tab 1 at 4-6. The agency has filed responses in opposition to the petitions for review. Holden PFR File, Tab 2; Miller PFR File, Tab 2.

## ANALYSIS

¶7      The Board has found that an agency meets its burden of proving that a furlough promotes the efficiency of the service by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a "fair and even manner." *Chandler v. Department of the*

*Treasury*, [120 M.S.P.R. 163](), ¶ 8 (2013). A "fair and even manner" means that the agency applied the adverse action furlough uniformly and consistently. *Id.* This does not mean that the agency is required to apply the furlough in such a way as to satisfy the Board's sense of equity. *Id.* Rather, it means that the agency is required to treat similar employees similarly and to justify any deviations with legitimate management reasons. *Id.*

¶8 The appellants argue that the agency failed to apply its determination as to which employees to furlough in a "fair and even manner." Holden PFR File, Tab 1 at 6; Miller PFR File, Tab 1 at 4. Specifically, the appellants argue that they were unfairly subjected to the furlough because their positions were misaligned in MIP-funded billets.[2] Holden PFR File, Tab 1 at 6; Miller PFR File, Tab 1 at 5. Appellant Miller claims that certain employees in NIP-funded billets in his group in OGC were performing MIP functions while other employees in MIP-funded billets, like the appellants, were performing NIP functions. Miller PFR File, Tab 1 at 5. Appellant Miller also argues that the agency unfairly implemented the furlough because it realigned two of the five attorneys in his group in OGC from MIP-funded billets to NIP-funded billets to exempt them from the furlough. *See id.* at 5-6. He further argues that, because the agency knew his billet was also misaligned in an MIP-funded billet, it similarly should have moved him to an NIP-funded billet to avoid the furlough. *Id.*

¶9 The administrative judge found unpersuasive the appellants' misalignment arguments. ID at 4-5. In so finding, she determined that the two attorneys who

---

[2] Neither appellant disputes that the furlough was, in general, a reasonable management solution to the financial restrictions placed on the agency. Nor do the appellants claim that they should not have been subjected to the furlough because they occupied positions with NIP billets or otherwise met the agency's criteria for an exception. *Cf. Dye*, [121 M.S.P.R. 142](), ¶ 10. Rather, their issue is with the agency's failure to realign the billets, which they contend would have resulted in their being realigned to an NIP billet and thus they would have been exempted from the furlough. *E.g.*, Holden PFR File, Tab 1 at 6; Miller PFR File, Tab 1 at 4-5.

the agency realigned prior to the furlough were in temporary billets at the time and had to be moved out of those billets prior to the furlough's implementation. ID at 5. She also determined that Appellant Miller and the two other attorneys in their group who were in MIP-funded billets were not occupying temporary billets at the time and could not be realigned for that reason. ID at 5. As set forth below, we find that the record evidence supports the administrative judge's findings.

¶10     In a declaration submitted below, DIA's Chief Financial Officer stated that the decision to align a billet to either the NIP or the MIP was made through negotiations between the offices of the Under Secretary of Defense for Intelligence and the Director of National Intelligence and that the decision typically was not made at the individual billet level. CAF, Tab 6 at 30. She indicated that the decision ultimately was submitted to the United States Congress and the President for their approval in an annual DOD appropriations bill. *Id.* A Management Analyst for DIA averred that the group of billets that included Appellant Miller's and Appellant Holden's billets was aligned to the MIP on August 3, 2008, well in advance of the FY 2013 furlough. Miller IAF, Tab 2 at 13-14 (declaration of DIA Management Analyst, J.C.). She also described that, during the planning of the furlough, there were discussions about whether the functions performed by the appellants would be better aligned to the NIP. *Id.* at 13. As a result of these discussions, DIA asked the Under Secretary of Defense for Intelligence to exempt from the furlough the appellants and the other attorney in the office who occupied an MIP-funded billet but he denied the request, stating that no furlough exemptions would be approved at that time to avoid unfair treatment. *Id.*

¶11     We find unavailing the appellants' arguments concerning the misalignment of their billets. In planning the furlough, the Secretary of Defense specifically directed the agency to furlough its employees who were funded with MIP funds. CAF, Tab 6 at 52. The record shows that the appellants' billets at the time of the

furlough were aligned to the MIP pursuant to an agreement, made years earlier, between the Under Secretary of Defense for Intelligence and the Director of National Intelligence. *Id.* at 13-14. Even if DIA believed that the appellants' billets were misaligned to the MIP at the time of the furlough, there is no evidence in the record to suggest that any alleged misalignment of the attorneys' billets in OGC was meant to target the appellants for personal reasons. *See, e.g.*, *In re Tinker AFSC/DP v. Department of the Air Force*, 121 M.S.P.R. 385, ¶ 17 (2014) (stating that the efficiency of the service determination encompasses whether the agency used a furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough without legitimate management reasons). Rather, the record reveals that the agency uniformly and consistently applied the furlough to its attorneys in OGC pursuant to its orders at the time. CAF, Tab 6 at 48-53; *see Chandler*, 120 M.S.P.R. 163, ¶ 8. Further, the appellants have not established that the agency was obligated to realign the billets as they propose under any applicable law or other authority.[3]

¶12        Concerning Appellant Miller's argument regarding the two attorneys whose billets were realigned prior to the furlough, DIA's General Counsel indicated that, in preparing for the furlough, the agency learned that those employees were in temporary billets. Miller IAF, Tab 7 at 16 (declaration of DIA's General Counsel). He stated that the Office of the Chief Financial Officer had directed, pursuant to a longstanding order from the Director of DOD, that all employees in temporary billets be moved into permanent billets in advance of the furlough. *Id.* To comply with the Director's order, the two attorneys in temporary billets were realigned to two open permanent billets in the NIP. *Id.*; *see* Miller IAF, Tab 2

---

[3] There has been no showing, for instance, that the agency failed to follow any applicable procedures in this regard, and thus the appellants' arguments fail to the extent they could be construed as an attempt to show harmful error under 5 U.S.C. § 7701(c)(2). *See* 5 C.F.R. § 1201.56(b)(1), (c)(3).

at 13 (declaration of DIA Management Analyst, J.C.). DIA's General Counsel further explained that, because Appellant Miller occupied a permanent billet at the time, the agency had no basis to reassign him into another billet. Miller IAF, Tab 7 at 16. Therefore, we find that the agency has shown that it implemented the furlough in a fair and even manner. Specifically, it has shown that its decision to exempt the two attorneys in Appellant Miller's group was based on a legitimate management reason, i.e., that their positions were NIP-funded, and that their realignment prior to the furlough was not based on personal reasons but on the fact that they were occupying temporary billets and needed to be realigned to permanent billets before the implementation of the furlough. *See, e.g.*, *In re Tinker AFSC/DP*, 121 M.S.P.R. 385, ¶ 17. Accordingly, we find that Appellant Miller has set forth no basis to disturb the administrative judge's findings in this regard.

¶13 Appellant Miller also challenges the administrative judge's finding that he failed to prove that the agency committed harmful error by violating DOD Instruction 1442.02.[4] Miller PFR File, Tab 1 at 6-8. Under 5 U.S.C. § 7701(c)(2)(A), the Board will not sustain an agency decision if the appellant "shows harmful error in the application of the agency's procedures in arriving at such decision." The Board may not assume that an employee has been harmed by a procedural error in the adverse action process; rather, the appellant bears the burden of proving harm. *Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 10 (2015). A procedural error is harmful where the record shows that the error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id.*

---

[4] On review, Appellant Miller does not challenge the administrative judge's finding that he failed to prove that the agency violated his due process rights, and we discern no basis to disturb that finding. ID at 7-8.

¶14    DOD Instruction 1442.02 provides, among other things, that the proposing and deciding officials in an adverse action against a civilian attorney, such as Appellant Miller, shall be in the attorney's supervisory chain. Miller IAF, Tab 7 at 42 (DOD Instruction 1442.02, Enclosure 4, Paragraph 6d). Here, there is no dispute that the proposing and deciding officials were not in Appellant Miller's supervisory chain. The administrative judge found no violation of the Instruction, however, because she found that the Instruction was inapplicable under the circumstances. ID at 5-6. She further found that, even if the agency was required to follow the Instruction, any error in its application was not harmful. ID at 6-7. Assuming arguendo that the agency committed procedural error in violation of DOD Instruction 1442.02, we agree with the administrative judge's finding that Appellant Miller failed to prove that the error was harmful. ID at 6-7.

¶15    According to Appellant Miller, his supervisory chain consisted of three civilian attorneys, including DIA's General Counsel. Miller IAF, Tab 4 at 9. In his declaration submitted below, the General Counsel stated that he would have complied with the Secretary of Defense's written order directing the furlough of civilian personnel in MIP-funded billets, like Appellant Miller, had he been the deciding official in the matter. Miller IAF, Tab 7 at 15. On review, Appellant Miller claims that the General Counsel's conclusion is based on a misunderstanding of the NIP and MIP realignment situation. Miller PFR File, Tab 1 at 7-8. He claims that all three attorneys in his supervisory chain "consistently expressed strong support for [his] position, and as such, had they been aware of [the Under Secretary of Defense for Intelligence's] willingness to realign certain NIP and MIP billets, they may well have worked to exempt [me] from the furlough." *Id*. Appellant Miller's speculation that the attorneys in his supervisory chain "may well have worked to exempt" him from the furlough had they been made aware of certain information does not meet his burden of proving that the agency's failure to assign the appropriate proposing and deciding

officials under the circumstances was likely to have caused the agency to reach a different decision on the proposed furlough action. *See Pumphrey*, 122 M.S.P.R. 186, ¶ 11 (finding that an appellant's speculation is insufficient to establish harm). Accordingly, we find no basis to disturb the administrative judge's finding that Appellant Miller failed to prove harmful procedural error. ID at 6-7.

¶16     Appellant Holden claims on review that the administrative judge abused her discretion when she failed to consider his prehearing submission and closing brief. Holden PFR File, Tab 1 at 4-5. It is well settled that administrative judges have broad discretion to regulate the proceedings before them, including the authority to rule on discovery motions and to impose sanctions as necessary to serve the ends of justice. *See Guzman v. Department of Veterans Affairs*, 114 M.S.P.R. 566, ¶ 12 (2010); *see also* 5 C.F.R. § 1201.43(a), (c). Here, the record shows that the administrative judge granted the agency's motion to strike Appellant Holden's prehearing submission as untimely filed, CAF, Tab 14 at 1 n.1, and its motion to strike Appellant Holden's closing brief because it included arguments already stricken from the record and because it raised new arguments not identified in the administrative judge's previous order, CAF, Tab 17 at 2. We find no abuse of discretion under the circumstances, as Appellant Holden failed to comply with the administrative judge's explicit instructions. CAF, Tabs 9, 14, 17; *see Ryan v. Department of the Air Force*, 117 M.S.P.R. 362, ¶ 5 (2012) (the Board ordinarily will not reverse an administrative judge's rulings regulating the proceedings absent an abuse of discretion); *see also Guzman*, 114 M.S.P.R. 566, ¶ 12 (the Board will not disturb an administrative judge's determination to impose a sanction, unless it is shown that the administrative judge abused her discretion or that her erroneous ruling adversely affected a party's substantive rights). In any event, as the administrative judge stated in the initial decision, the arguments raised by Appellant Holden in his prehearing submission and closing brief were the same arguments that Appellant Miller timely raised and which she found unpersuasive in the initial decision. ID at 8

n.1.  Because we affirm her findings on review, we find that Appellant Holden has not shown that any alleged abuse of discretion prejudiced his substantive rights.  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for the reversal of an initial decision).

¶17       Accordingly, we affirm the furlough actions.

ORDER

¶18       This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United

States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.